UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:00CR263(JCH) |
| | : | |
| v. | : | |
| | : | |
| LESLIE WAYNE CARLOS | : | JULY 21, 2008 |

**GOVERNMENT'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE:**
**SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)**

On or about April 22, 2008, the Court issued an Order directing the defendant to show

cause why he should qualify for a reduction of his sentence under the new crack Guidelines,

pursuant to 18 U.S.C. § 3582(c)(2) and 994(u), as well as Amendment 706 to the United States

Sentencing Guidelines.

In its Order to Show Cause, the Court stated that it had reviewed a supplemental

Presentence Report prepared by the Probation Office suggesting that the defendant is not eligible

for a sentence reduction because the Amendment did not lower the defendant's applicable

guideline range, insofar as the applicable guideline range was not driven by crack quantity, but

rather the defendant's status as a career offender.

On or about June 18, 2008, in response to the Court's Order, the defendant, through

counsel, filed a motion seeking to reduce his sentence from 102 to 82 months.  In support of his

motion, the defendant argued that he is entitled to a sentence reduction because the Court found

that the otherwise applicable career offender guideline range overstated his criminal history and it

departed from that guideline range to a sentencing range driven by U.S.S.G. § 2D1.1.

The government agrees with the United States Probation Office that the defendant is not

eligible for a reduction in his sentence.  As set forth in greater detail below, and as this Court has

previously held, because the defendant's guideline range was determined by his status as a career offender, the November 1, 2007 amendments to the crack cocaine guidelines simply did not have the effect of lowering the defendant's applicable guideline range, even though the Court subsequently *departed* from that range. Because the crack amendments did not alter the defendant's guideline range, he is not eligible for a reduction in his sentence. *See United States v. Darius McGee*, 3:01CR219(JCH), Doc. #61, (D. Conn. Mar. 27, 2008).

I.     **BACKGROUND**

Leslie Wayne Carlos's felony record began with his conviction in Superior Court of the State of Connecticut on September 7, 1995 for a felony offense of Sale of Narcotics, for which he received a five year suspended sentence, and 3 years probation. While on probation, the defendant was arrested, charged and convicted for a *federal* drug offense in South Carolina on January 16, 1997. The defendant was sentenced to a term of imprisonment of 33 months, and at the age of 19, already stood convicted of two felony narcotics offenses (one of which was federal). The defendant's federal sentence included a supervised release term, which he proceeded to violate repeatedly.

A year and a half later, the defendant was associated with the Hill Crew, a violent Norwalk based gang. This association was confirmed by his presence in a shooting, and his participation in fleeing from the scene with members of the Hill Crew. More specifically, on August 24, 1999, Michael Dawson, a member of the Hill Crew shot Kelvin Burden in the chest in South Norwalk, while Kelvin Burden was seated in his Mercedes automobile. The shooting arose in connection with a long standing feud between the Burden Organization and the Hill Crew, of which Dawson was a member. Leslie Carlos was present for the shooting, and fled

2

from the scene in his gold Lexus automobile, also driving a number of members of the Hill Crew away from the scene with him. On repeated occasions, Norwalk police department officers attempted to interview Carlos in connection with the incident. Carlos refused, and was uncooperative with police.[1]

Approximately nine months later, the defendant was arrested for a domestic violence assault in June 2000. Although the charges were dismissed after the defendant completed a domestic violence education class (and the defendant did not receive any criminal history points as a result of the incident), it is clear that the assault occurred. See PSR ¶ 48.

Shortly thereafter – while still on federal supervised release – the defendant was found to be engaging in narcotics trafficking for a significant period of time, which led to the charges for which he was sentenced here. Specifically, the defendant was intercepted on court authorized Title-III wiretaps in the fall of 2000, engaging in the voluminous purchase and sale of crack cocaine over an approximately three month period. The defendant was intercepted on a regular basis over this time frame of the wiretap engaging in crack cocaine distribution with members of the Burden Organization.

At that time, the defendant's compliance with the terms of his supervised release were far from exemplary. As reflected in his supervised release violation petition, the defendant routinely tested positive for drug use, and had other problems with his supervision. Thus, the PSR reflected, and the facts of his case demonstrated, that the defendant's criminal behavior was consistent over a more than five year period.

---

[1] Carlos' presence at the scene, and the government's representation of his involvement was based on information from several cooperating witnesses. Specifically, at least four cooperating witnesses confirmed Carlos's presence at the scene of the shooting, and his participation in driving them from the scene to avoid law enforcement.

Before Carlos' indictment in December 2001, counsel for the government telephoned Carlos' then-counsel and informed him that the government intended to charge Carlos with drug trafficking, but understood he was on supervised release. The government offered Carlos the opportunity to plead guilty to an information prior to indictment. A plea agreement was prepared, and a proceeding was scheduled before Magistrate Judge William Garfinkel for the presentment and plea. The defendant failed to show. The government then presented the case to the grand jury, which returned an indictment against the defendant for conspiracy to possess with intent to distribute more than 50 grams of cocaine base.

Because the defendant had two prior felony narcotics convictions, he was eligible for a mandatory life sentence upon the filing of a section 851 notice. Further, even without the 851 filings, the defendant's guidelines upon a plea to the charge contained in the indictment would have yielded a sentencing guideline range of 262-327 months as a result of his career offender status, and the fact that the maximum penalty was life imprisonment. *See* U.S.S.G. Section 4B1.1(A).

The government and the defendant agreed, however, to allow the defendant to plead to a substitute information which charged more than 5 grams of crack cocaine, as opposed to fifty, thereby reducing the maximum penalty for the offense to forty years, and the reducing the career offender guideline to produce a sentencing range of 188-235 months. In exchange, the defendant agreed not to seek a downward departure.

Accordingly, on February 25, 2002, the defendant waived indictment and pled guilty to a one-count substitute information charging him with conspiracy to possess with the intent to distribute and the distribution of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B) and 846.

4

Pursuant to his written plea agreement, Carlos stipulated to his status as a career offender, and to the applicable Guideline range of 188-235 months imprisonment:

> The defendant and the Government agree that the defendant is responsible for more than 5 grams of cocaine base as a result of his direct participation in this offense. Further, the government and the defendant agree that the defendant is a "career offender" pursuant to United States Sentencing Guidelines Section 4B1.1 as the defendant has two prior felony narcotics convictions that meet the requirements of section 4B1.1. As a result, the defendant's base offense level is 31, and Criminal History Category VI, resulting in a sentencing guideline range of 188-235 months. Both parties agree that they will not seek a departure from this range. The defendant understands that he is waiving his right to seek a departure knowingly and voluntarily.

*See* Plea Agreement dated February 22, 2002 at 4.

The PSR found that Carlos' base offense level – because it involved 5 or more grams of crack cocaine – was 26. PSR ¶ 39. (At sentencing, the Court determined that the quantity of crack cocaine properly attributable to the defendant was 35 to 50 grams of crack cocaine, resulting in a base offense level of 30. *See* Sentencing Transcript dated June 3, 2002 at 62-63). Consistent with the parties' plea agreement, however, the PSR found that the defendant qualified as a career offender under U.S.S.G. § 4B1.1, in light of his having previously sustained two felony narcotics convictions. *See* PSR ¶ 44. Assuming a three-level reduction for acceptance of responsibility, the PSR determined, consistent with the parties' stipulation in the plea agreement, that the total adjusted base offense level was 31. PSR ¶¶ 45-46.

The PSR went on to note that Carlos had a total of three prior convictions, resulting in a total of six criminal history points, otherwise placing him in Criminal History Category III. PSR ¶ 31. The PSR again noted, however, consistent with the parties' plea agreement, that pursuant to U.S.S.G. § 4B1.1, the defendant's Criminal History Category was actually VI, in light of his career offender status. PSR ¶ 51.

The PSR concluded that the defendant's resulting, applicable sentencing guideline range was 188-235 months.  PSR ¶ 82.

During sentencing proceedings on May 28, 2002 and June 3, 2002, the Court adopted the factual findings of the PSR, and determined that, under U.S.S.G. § 4B1.1, the defendant's total offense level was 31, his Criminal History Category was VI, and his resulting Guideline range was 188-235 months' imprisonment.  The court and the parties were in agreement that this was the applicable sentencing guidelines range.  *See, e.g.*, Sentencing Tr. dated 6/3/2002 at 72 (". . . the career offender determination, which I don't think anybody contests is appropriate . . . .").

The Court, however, *sua sponte* granted a *downward departure* from the applicable, agreed-upon sentencing guidelines range, finding that the otherwise applicable career offender guideline range overstated the defendant's criminal history.  Specifically, the Court granted a downward departure under U.S.S.G. § 4A1.3 to an offense level of 27 and a Criminal History Category III – the offense level and criminal history category that would have otherwise been applicable to the defendant, but for his status as a career offender.  *See* Sentencing Tr. dated 6/3/2002 at 72; *see also* Statement of Reasons at 2.

The Court's departure to an offense level of 27 and a Criminal History Category III resulted in a range of 87 to 108 months.  *See* Sentencing Tr. dated 6/3/2002 at 72.  The Court imposed a sentence towards the high end of that range, imposing a sentence of 102 months incarceration.

On June 13, 2002 the Court also entered an order revoking Carlos' federal supervised release and imposing a sentence of 18 months on that violation, to run consecutive to the 102 months already imposed.

6

Judgment entered on July 1, 2002.  On March 4, 2003, the Court entered an Amended

Judgment.   On June 10, 2003, the Court entered a Second Amended Judgment, clarifying that

the defendant was to be incarcerated for a term of 102 months on the one-count information and

18 months for his violation of federal supervised release.

The defendant is presently serving his sentence and, according to the Bureau of Prisons,

he has an estimated release date of October 11, 2010.

## II.    **DISCUSSION**

On November 1, 2007, the Sentencing Commission amended the cocaine base guidelines

set forth in U.S.S.G. § 2D1.1(c).  The amendment in question is Amendment 706, effective

November 1, 2007, which reduced the base offense level for most crack cocaine offenses.[2]  In

Amendment 706, the Commission generally reduced by two levels the offense levels applicable

to crack cocaine offenses.  The Commission reasoned that, putting aside its stated criticism of the

100:1 ratio applied by Congress to powder cocaine and crack cocaine offenses in setting statutory

mandatory minimum penalties, the Commission could respect those mandatory penalties while

still reducing the offense levels for crack offenses.  *See* U.S.S.G., Supplement to App. C, Amend.

706.  Previously, the Commission had set the crack offense levels in Section 2D1.1 above the

range which included the mandatory minimum sentence.  Under the amendment, the

Commission has set the offense levels so that the resulting guideline range includes the

mandatory minimum penalty triggered by that amount, and then set corresponding offense levels

for quantities which fall below, between, or above quantities which trigger statutory mandatory

---

[2]  Amendment 706 was further amended in the technical and conforming amendments set forth in
Amendment 711, also effective November 1, 2007.

minimum penalties.  For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment.  See 21 U.S.C. § 841(b)(1)(B).  Therefore, the revised guideline applies an offense level of 24 to a quantity of cocaine base ("crack") of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The final result of the amendment is a reduction of two levels for each of the ranges set in the guidelines for crack offenses.  At the high end, the guideline previously applied offense level 38 to any quantity of crack of 1.5 kilograms or more.  That offense level now applies to a quantity of 4.5 kilograms or more; a quantity of at least 1.5 kilograms but less than 4.5 kilograms falls in offense level 36.  At the low end, the guideline previously assigned level 12 to a quantity of less than 250 milligrams.  That offense level now applies to a quantity of less than 500 milligrams.

In this case, the defendant's motion must be denied because the crack guideline amendment simply did not have the effect of lowering the defendant's applicable guideline range.

Pursuant to 18 U.S.C.  § 3582(c)(2), a defendant's sentence may *only* be reduced when he was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  Further, under the statute, a reduction is allowed only when "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  In its revisions to Section 1B1.10, the Commission, consistent with the statutory directive that a reduction should occur only where the defendant's sentencing range

8

was lowered, made clear that a sentencing court is not authorized to reduce a defendant's sentence when a retroactive amendment does not result in lowering the applicable sentencing range for the defendant. Specifically, subsection (a)(2)(B) states: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore *is not authorized under 18 U.S.C. § 3582(c)(2)* if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10 (a)(2)(B) (emphasis added).

Courts have agreed that where, as is the case here, application of the pertinent amendment does not result in a different sentencing range, no reduction of sentence may occur. *See, e.g.*, *United States v. Gonzalez-Balderas*, 105 F.3d 981, 984 (5th Cir. 1997) (although a retroactive amendment reduced the defendant's offense level, the new level (44) still required the sentence of life imprisonment which was imposed, and the district court properly denied the motion summarily); *United States v. Allison*, 63 F.3d 350, 352-54 (5th Cir. 1995) (motion properly denied where the sentence would not be different under new guideline); *United States v. Townsend*, 98 F.3d 510, 513 (9th Cir. 1996) (although a retroactive amendment to the career offender guideline changed the definition of a statutory maximum, the amendment did not benefit the defendant given that the maximum penalty for his offense, bank robbery, was the same under either definition, and thus the guideline range was the same); *United States v. Dorrough*, 84 F.3d 1309, 1311-12 (10th Cir. 1996) (the district court did not abuse its discretion in denying the § 3582(c)(2) motion, where an alternative means of sentencing permitted by the applicable guideline produced the same offense level which applied earlier); *United States v. Armstrong*, 347 F.3d 905, 908 (11th Cir. 2003) (the district court correctly denied the motion,

9

where the defendant's offense level was not altered by the subject of the retroactive amendment); *United States v. Young*, 247 F.3d 1247, 1251-53 (D.C. Cir. 2001) (district court properly denied motion where the sentence was actually based on considerations not affected by the retroactive guideline amendment).

Moreover, numerous courts that have specifically addressed the career offender scenario have held that a defendant whose sentence was driven by his or her status as a career offender is not entitled to a reduction under the new crack guidelines. *Cf., United States v. Ogman*, No. 06-0203-cr, 2008 WL 925320 (2d Cir. Apr. 7, 2008) (remand for resentencing for possession with intent to distribute cocaine base and for conspiracy to possess cocaine with intent to distribute was not warranted where guidelines range applied to defendant's case was not result of crack ratio, but rather from defendant's status as career offender); *see also United States v. Gray*, 2008 WL 895012, *2 n.1 (4th Cir. Apr. 2, 2008); *United States v. Bronson*, 2008 WL 539796, *2 (4th Cir. Feb. 27, 2008); *United States v. Tingle*, 2008 WL 1902055 (8th Cir. May 1, 2008); *United States v. Williams*, 2008 WL 762083, *7 (E.D. Ark. Mar. 18, 2008); *United States v. Turner*, 2008 WL 276581 (W.D. Ark. Jan. 30, 2008); *United States v. McDougherty*, 2008 WL 752597, *4-5 (C.D. Cal. Mar. 18, 2008); *United States v. Lee*, 2008 WL 2357243 (N.D. Cal. June 6, 2008); *United States v. Herrera*, 2008 WL 2438036 (D. Colo. June 16, 2008); *United States v. Gutierrez*, 2008 WL 927564 (D. Conn. Apr. 4, 2008); *United States v. Brantley*, 2008 WL 718143 (M.D. Fla. Mar. 14, 2008); *United States v. Davis*, 2008 WL 660277 (M.D. Fla. Mar. 6, 2008); *United States v. Straughter*, 2008 WL 717686 (S.D. Fla. Mar. 24, 2008); *United States v. Jones*, 2008 WL 717684 (S.D. Fla. Mar. 17, 2008); *United States v. McKinney*, 2008 WL 2224899 (S.D. Ill. May 27, 2008); *United States v. Nunnally*, 2008 WL 2266301 (N.D. Ind. June

10

2, 2008); *United States v. Diaz*, 2008 WL 2036831 (N.D. Iowa May 9, 2008); *United States v. Martin*, 2008 WL 1995090 (D. Kan. May 6, 2008); *United States v. Plater*, 2008 WL 2543435 (D. Md. June 24, 2008); *United States v. Conce*, 2008 WL 2038901 (D. Mass. May 13, 2008); *United States v. Washington*, 2008 WL 660227 (D. Me. Mar. 6, 2008); *United States v. LaFrance*, 2008 WL 447548 (D. Me. Feb. 19, 2008); *United States v. Hayes*, 2008 WL 2444446 (E.D. Mich. June 13, 2008); *United States v. Lewis*, 2008 WL 1968712 (S.D. Miss. May 5, 2008); *United States v. Rogers*, 2008 WL 2329320 (W.D.N.C. June 5, 2008); *United States v. Ware*, 2008 WL 906410 (D.N.H. Apr. 3, 2008); *United States v. Pizarro*, 2008 WL 351581 (D.N.H. Feb. 8, 2008); *United States v. Taylor*, 2008 WL 697341 (W.D. Okla. Mar. 12, 2008); *United States v. Rivera*, 535 F. Supp. 2d 527 (E.D. Pa. 2008); *United States v. Thompson*, 2008 WL 750563 (M.D. Pa. Mar. 19, 2008); *United States v. Strothers*, 2008 WL 2473686 (W.D. Pa. June 19, 2008); *United States v. Wright*, 2008 WL 2078134 (D.S.C. May 15, 2008); *United States v. Jackson*, 2008 WL 892688 (W.D. Va. Mar. 28, 2008); *United States v. White*, 2008 WL 724171 (W.D. Va. Mar. 17, 2008); *United States v. Manns*, 2008 WL 723748 (W.D. Va. Mar. 13, 2008); *United States v. Garcia*, 2008 WL 725025 (E.D. Wash. Mar. 17, 2008); *United States v. Biami*, 2008 WL 1869108 (E.D. Wis. Apr. 22, 2008) (includes extensive analysis and citation of numerous district court decisions which unanimously agree with this result).

In this case, the defendant's guideline calculation did not rest on the provision regarding crack cocaine in Section 2D1.1, which has been amended. Under the version of Section 2D.1.1 in effect at the time of sentencing, the defendant's base offense level for the crack offense was 27, which would be reduced to 25 pursuant to Amendment 706. However, there is no dispute that the Government, the defendant, the Probation Office and the Court all agreed that the

defendant's guideline calculation and resulting range was driven by his status as a career offender pursuant to U.S.S.G. § 4B1.1.  All also agreed that the defendant, in light of his career offender status, was subject to a total adjusted offense level of 31 and a Criminal History Category of VI, resulting in an applicable sentencing guidelines imprisonment range of 188 to 235 months. Those career offender enhancements were unaffected by Amendment 706, and the defendant's applicable offense level and guideline range remains exactly what it was at the time of sentencing, notwithstanding that the Court subsequently *departed* from that agreed-upon, applicable guideline range.  Section 1B1.10 directs: "the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected."  U.S.S.G. §1B1.10(b)(1).  Accordingly, the defendant may not receive any relief under Section 1B1.10.

The defendant, however, relying on an emerging line of cases, argues that when the Court departed from the otherwise applicable career offender guideline range, and proceeded to impose sentence pursuant to what the defendant would have faced without regard to the otherwise applicable career offender provisions, its sentence then became "based on" Section 2D1.1, which has now been amended.  Accordingly, the defendant claims, he should be entitled to a sentence reduction under the new crack guidelines.  *See* Defendant's Motion to Amend Judgment citing, *e.g., United States v. Nigatu*, 2008 WL 926561 (D. Minn. Apr. 7, 2008) (while a defendant sentenced as a career offender does not benefit from the retroactive amendment, the amendment applied in this case, where the district court at the original sentencing hearing did not apply the career offender guideline upon finding that it overstated the defendant's criminal history); *United*

12

*States v. Poindexter*, 2008 WL 1946821 (E.D. Pa. May 2, 2008) (same); *United States v. Darrell*

*Harris*, 3:97CR00171(RNC), Doc. #40, (D. Conn. May 12, 2008) (same).

      The very position offered by the defendant in this case, however, was rejected by this

Court in *United States v. Darius McGee*, 3:01CR219(JCH), Doc. #61, (D. Conn. Mar. 27, 2008)

(ruling attached as Exhibit 1). As this court ruled, in *McGee*,

> the defendant was sentenced to a term of imprisonment of 115 months.  The court
> arrived at that sentence after calculating the defendant's guideline to be offense level
> 29 and his criminal history VI, for a range of 151 to 188.   This was based on the
> defendant's status as a career offender (level 32, less 3 points for acceptance)*.   The
> court then departed, under Guideline 4A1.3 (overstatements of criminal history), to
> a guideline range of 92 to 115 months.*
>
> *In light of the above, defendant does not qualify for a reduction in sentence.   His
> guideline calculation is unchanged by the Amendment.    The career offender
> guideline would still be used.*

*Id*. at 2 (emphasis added).[3]  Similarly, in this case, the defendant's guideline range was based on

his status as a career offender, notwithstanding that the court then *departed*  under Guideline

4A1.3 (overstatements of criminal history), to a guideline range of 87 to 108 months.  As in

*McGee*, Carlos does not qualify for a reduction in sentence because his guideline calculation is

unchanged by Amendment 706.  As in *McGee*, "[t]he career offender guideline would still be

used." *Id.*

      The government respectfully submits that the cases on which the defendant relies run

counter to the plain language of 18 U.S.C. § 3582 and U.S.S.G. § 1B1.10, and this Court was

correct when it rendered its ruling in *United States v. Darius McGee*, 3:01CR219(JCH), Doc.

#61, (D. Conn. Mar. 27, 2008).

---

[3]  McGee filed a notice of appeal on or about April 3, 2008.  It is undersigned counsel's
understanding that the appeal is pending, awaiting the filing of an opening brief.

Reductions in sentence post sentencing under 18 U.S.C. § 3582(c) are permitted only in circumstances "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Commission has expressly limited the circumstances for any reduction under 3582(c) as set forth in the new U.S.S.G. § 1B1.10. The revised Section 1B1.10 guidelines make clear that a reduced sentence based on the crack amendment is only available if the new amendment "lowers the applicable guideline range." App. Note 1. The amendment is inapplicable if it does not have "the effect of lowering the defendant's applicable guideline range *because of the operation of another guideline* or statutory provision." *Id.* (emphasis added). The career offender guideline is just such "another guideline." The plea agreement, the PSR and the sentencing transcript make clear that the Court and the parties based the applicable guidelines range on the career offender guidelines – not § 2D1.1, and the Court subsequently *departed* from that career offender guideline range.

The defendant tries to ignore the express language of Application Note 1 of U.S.S.G. § 1B1.10, by arguing that he was ultimately sentenced "based on" U.S.S.G. § 2D1.1, implying that the term "applicable guidelines range" somehow refers to the ultimate sentencing range reached by the court *after* any departure, rather than the guidelines range reached by the methodical application of the guidelines before departure. Such an interpretation, however, is at odds with the traditional application of the guidelines. If the Sentencing Commission intended such an interpretation it would not have used terms that were previously plainly and clearly defined. A departure for overstated criminal history – the ground the Court adopted for downward departure in this case – is defined in the very outset of the Guidelines to mean the assignment of a criminal history category in order to effect a "sentence outside *the applicable guideline range*." U.S.S.G.

14

§ 1B1.1 Application Note 1(E)(ii) (emphasis added).   Accordingly, the Sentencing Commission plainly contemplated that the "applicable guideline range" to be the methodically derived range calculated *prior* to any departure for overstated or understated criminal history.

The Sentencing Commission's threshold requirement that there be a change in the original guidelines calculation before departure as a result of the crack amendments to justify sentence reduction is reinforced in U.S.S.G. § 1B1.10.  Section 1B1.10 and the Application Notes draw a clear distinction between the calculated "applicable guidelines range" and the ultimate sentence after a subsequent departure.  To receive a potential reduction for the crack amendment in a case with a downward departure, the Sentencing Commission *requires* there to be an amended guidelines range from which to depart. U.S.S.G. § 1B1.10(b)(2)(B).  Without an amended guidelines range, the threshold requirement for a reduction is not met.  *Id.* at (2).  Where, as here, the parties, the Probation Office, and the Court all agreed that the defendant was a career offender, there simply is no "amended" guidelines range to reduce – the career offender guidelines have not been amended.  As Section 1B1.10 makes clear, the court "shall leave all other guidelines application decisions unaffected."  *Id.* at (b)(1).  Where the original guidelines were calculated applying the career offender provisions, the Court thus must leave the guideline application unaffected.

The Sentencing Commission was more than able to assess under what circumstances a sentence reduction was warranted – particularly circumstances as common as a career offender designation with a subsequent departure based on overstated criminal history.  If the Commission chose to change the express wording of its guidelines, it was certainly in a position to do so.  The recent amendment to Section 1B1.10 makes clear, however, that the Commission did not

want to permit a Section 3582 sentence reduction in crack cases where the career offender guidelines applied. Otherwise it would not have expressly clarified U.S.S.G. § 1B1.10 Application Note 1, noting that amendments do not apply when the amendment does not have the effect of lowering the applicable guideline range "because of the operation of another guideline." Moreover, it is worthwhile to note that this is the same Commission that in the last several years evaluated all the career offender cases and then revised the Guidelines to *prohibit* downward departures of more than one criminal history category, regardless of whether the underlying crime involved crack, marijuana or many other illegal drugs. *See* U.S.S.G. § 4A1.3(b)(3)(A). Under the facts of this case, if this defendant were sentenced now, the Commission would at best authorize a sentence of no less than 168 months, giving the defendant credit for a one level departure of his criminal history category (level 31, criminal history V), rather than the 102 month sentence he received based on alleged overstated criminal history. It is difficult to accept that this same Commission would have intended the crack amendments to permit a far lower sentence in the narrow circumstances of a 3582 reduction for a career offender based on alleged overstated criminal history.

The cases relied on by the defendant ignore the deference that § 3582 requires the court give the Sentencing Commission and its policy statements to determine what cases justify the special remedy of sentence reduction under § 3582 post-sentencing. Rather than undertaking a plain reading of U.S.S.G. § 1B1.10 and the relevant advisory notes, the cases relied upon by the defendant pick and choose language from § 3582, divorcing the application of that statute from the express and unequivocal guidance given by the Sentencing Commission in U.S.S.G. § 1B1.10 and its other policy statements. For the reasons discussed above, the Sentencing

Commission, however, carefully limited those cases that would warrant post-sentencing relief. It is thus extremely difficult to understand how the requested reduction by this career offender "is consistent with applicable policy statements issued by the Sentencing Commission," a statutory requirement of 3582 to permit the requested relief.

## III.  <u>CONCLUSION</u>

For the reasons stated above, because the defendant's guideline range was determined by his status as a career offender, the November 1, 2007 amendments to the crack cocaine guidelines simply do not have the effect of lowering the defendant's applicable guideline range, even though the Court subsequently *departed* from that range.  As this Court has previously held, because the crack amendments do not alter the defendant's guideline range, he is not eligible for a reduction in his sentence.  *See United States v. Darius McGee*, 3:01CR219(JCH), Doc. #61, (D. Conn. Mar. 27, 2008).

Respectfully submitted,

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

/s/
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct19105
United States Attorney's Office
157 Church Street, 23d Floor
New Haven, CT 06510
(203) 821-3700
(203) 821-3829 (fax)
Stephen.Reynolds@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2008, a copy of the foregoing was filed electronically and

served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by

e-mail to all parties by operation of the court's electronic filing system or by mail to anyone

unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the court's CM/ECF System.

Sarah A. L. Merriam                          Michael E. Sheehan
Assistant Federal Public Defender            Supervising U.S. Probation Officer
265 Church Street, Suite 702                 United States Probation Officer
New Haven, Connecticut 06510                 157 Church Street, 22nd Floor
(203) 498-4200                               New Haven, Connecticut 06510
(203) 498-4207 (fax)                         (203) 773-2100
sarah_merriam@fd.org                         (203) 773-2200 (fax)


  /s/
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY

18