UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                                                         :
UNITED STATES OF AMERICA         :      Case No. 3:00CR00263(JCH)
                                                         :
v.                                                       :
                                                         :
LESLIE WAYNE CARLOS                :      August 28, 2008
                                                         :
---------------------------------------------------------x

## SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION TO AMEND JUDGMENT

The defendant, Leslie Wayne Carlos, hereby respectfully submits this supplemental memorandum in further support of his motion for a reduction in his sentence of incarceration from 102 months to 82 months.

On August 5, 2008, this Court issued a ruling in the matter of United States v. Milton Menafee, denying a reduction in sentence under 18 U.S.C. § 3582 to Mr. Menafee. See United States v. Menafee, 3:04CR00138(JCH), Doc. # 2158 (D. Conn., Aug. 5, 2008) (hereinafter "Menafee ruling"). The Court concluded that the "applicable guidelines range" in Mr. Menafee's case was the range that was determined prior to the application of § 4A1.3 of the Guidelines. Id. at 5. The Court framed the question before it in this regard as whether the "applicable guideline range" in such cases is "the range that is calculated after departures[.]" Id. The Court concluded that the "applicable guideline range" for purposes of § 3582 is the range determined prior to the consideration of any departures.

Mr. Carlos respectfully contends that the Menafee ruling misapprehends the nature of a

§ 4A1.3 "departure" and, therefore, Mr. Carlos seeks a different result in this case.[1]

## I. The Court's Determination of the Appropriate Guideline Range for Mr. Carlos

The Court, in its Statement of Reasons, found that Mr. Carlos should not be sentenced at the offense level and criminal history category suggested by the career offender provision of the Guidelines:

> The Court finds that the effect of the career offender status over-represents the defendant's prior record and departs to a level 27, Criminal History Category III, because there is not an appropriate relationship between the sentence in the criminal offense or the sentences . . . imposed in the two prior convictions. The court believes that the criminal sentence in the instant offense is well out of proportion to the sentence imposed in the prior state offenses and, well in excess of what is necessary for appropriate punishment.

Statement of Reasons at 2.

The Court stated at the sentencing hearing "that there is not an appropriate relationship between the sentence for the current offense and the sentences, particularly the time served, for the prior offenses." 6/3/2002 Tr. at 70. As a result, the Court employed the provisions of § 4A1.3 to eliminate the effect of the career offender provision, and found that "the appropriate guideline range is the range in which this defendant would have fallen but for the career offender determination, which is level 27 and category III of 87 to 108 months[.]" Id. at 72. **It is undisputed that the basis for the Court's determination of the applicable guideline range was § 4A1.3.** Mr. Carlos did not receive any Chapter 5 departures.

---

[1] Undersigned counsel notes that the arguments made herein have not previously been made by this counsel or, to counsel's knowledge, by other counsel in this District. Accordingly, while Mr. Carlos has no standing to seek reconsideration of the Menafee ruling, he requests that the Court consider these new arguments and find that the reasoning set forth in the Menafee ruling should not be applied in his case.

## II.     The Nature of Guidelines Section 4A1.3

Section 4A1.3 is unique in the structure and functioning of the Guidelines. It uses the term "departure" to describe its function. In accordance with this terminology, the Court's Statement of Reasons includes the § 4A1.3 adjustment in Mr. Carlos' case under the heading of "departures," and all counsel for Mr. Carlos and for the Government in this case have referred to it as such.

Upon careful study of the Guidelines, however, it becomes apparent that **an adjustment under § 4A1.3 is <u>not</u> a true departure within the meaning of the Guidelines**.

The introductory chapter of the Guidelines Manual, Chapter One, sets forth the "general application principles" to be used in determining a sentence under the Guidelines. Part A describes departures specifically, and notes that there are only **three types of departures** included in the Guidelines:

> The first kind, which will most frequently be used, is in effect an interpolation between two adjacent, numerically oriented guideline rules. A specific offense characteristic, for example, might require an increase of four levels for serious bodily injury but two levels for bodily injury. Rather than requiring a court to force middle instances into either the 'serious' or the 'simple' category, the guideline commentary suggests that the court may interpolate and select a midpoint increase of three levels. The Commission has decided to call such an interpolation a 'departure' in light of the legal views that a guideline providing for a range of increases in offense levels may violate the statute's 25 percent rule (though others have presented contrary legal arguments). Since interpolations are technically departures, the courts will have to provide reasons for their selection, and it will be subject to review for 'reasonableness' on appeal. The Commission believes, however, that a simple reference by the court to the 'mid-category' nature of the facts will typically provide sufficient reason. It does not foresee serious practical problems arising out of the application of the appeal provisions to this form of departure.
>
> The second kind involves instances in which the guidelines provide specific guidance for departure, by analogy or by other numerical or non-numerical suggestions. For example, the commentary to §2G1.1 (Transportation for Prostitution), recommends

> a downward adjustment of eight levels where commercial purpose was not involved.[2] The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the suggestions, and that the courts of appeals may prove more likely to find departures 'unreasonable' where they fall outside suggested levels.
>
> A third kind of departure will remain unguided. It may rest upon grounds referred to in Chapter 5, Part H, or on grounds not mentioned in the guidelines. While Chapter 5, Part H lists factors that the Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly unusual.

U.S.S.G. § 1A1.1(4)(b) (Nov. 1, 2007) (footnote added).

The question is: if a § 4A1.3 adjustment for overstatement of criminal history is a true "departure," which of these three types is it? Clearly, it is not the first. A § 4A1.3 adjustment does not call for the Court to select a midpoint between two numerical choices in a "mid-category" situation. It is not the second, because it is not set forth in the form of a policy statement "suggestion" relating to a specific application problem, but instead occupies its very own section within the Guidelines – § 4A1.3. Also, the November 1, 2001, Guidelines Manual applied to Mr. Carlos does not provide "specific guidance" regarding the precise extent of departure that would be appropriate in a given § 4A1.3 situation. It is not the third, because an adjustment for overstatement of criminal history rests neither on grounds referred to in Chapter 5, Part H, nor on grounds not mentioned in the guidelines. To the contrary, it rests exclusively and specifically on grounds described in Chapter 4, Part A.

Thus, an adjustment to account for the overstatement of criminal history by the career

---

[2] Counsel has been unable to locate this commentary to § 2G1.1 in the current edition of the Guidelines. It appears that this commentary was deleted from the application notes to § 2G1.1 in 1996, but § 1A1.1(4)(b) was never updated to reflect the deletion.

offender guideline does not fall within any of the three kinds of departure identified and recognized by the Sentencing Commission. The familiar canon of construction known as "inclusio unius est exclusio alterius" – a canon which applies to construction of guidelines provisions just as it does to statutes – is instructive here. See, e.g., United States v. Tappin, 205 F.3d 536, 540 (2d Cir. 2000). The Sentencing Commission specifically detailed the three types of departures contemplated by the Guidelines. The supposed "departure" we are now considering does not come within any of these types. Simply put: If a § 4A1.3 adjustment is not any of the three types of departures, it's not really a departure.

Even more telling than this provision of the introductory chapter to the Guidelines is the direction provided by § 1B1.1 of the Guidelines, entitled "Application Instructions." It is this section that provides the basic "recipe" to be followed in applying the Sentencing Guidelines. Section 1B1.1 "lists nine essential steps for the court to follow in imposing sentence." United States v. Merritt, 988 F.2d 1298, 1309 (2d Cir. 1993). These steps are to be applied in the order set forth in § 1B1.1. Steps (a) through (e) relate to the determination of a defendant's offense level under Chapters 1, 2 and 3. Step (f) directs a court to: "Determine the defendant's criminal history category as specified in Part A of Chapter Four. Determine from Part B of Chapter Four any other applicable adjustments." U.S.S.G. § 1B1.1(f) (Nov. 1, 2001). **Chapter Four is never again mentioned in the sequential steps set forth in § 1B1.1.** Step (f) is the last point at which a Court is directed to consult Chapter Four.

The next step, step (g), directs the sentencing court to "[d]etermine the guideline range in Part A of Chapter Five" – that is, in the Sentencing Table. U.S.S.G. § 1B1.1(g) (Nov. 1, 2001). As the Supreme Court described this step, "[a]fter determining the 'offense level' and Criminal

History Category applicable to the offender, the sentencing judge (after making various other possible adjustments) will consult" the sentencing table.  United States v. LaBonte, 520 U.S. 751, 765 (1997).  **Step (g) is the first time that the Court is directed to refer to the Sentencing Table.**  At no point prior to step (g) is a sentencing court directed to the "determine the guideline range."  Step (g) is the point at which the guideline range is first <u>determined</u>.  Only then, after the guideline range has been determined by reference to the Sentencing Table, does the Court consider sentencing options and <u>true</u> departures.  "The final step is to consider offender characteristics, together with all pertinent policy statements and commentary, to determine whether departure is warranted."  Merritt, 988 F.2d at 1309.

The Court made a determination under § 4A1.3 – an integral part of Chapter Four of the Guidelines – that Mr. Carlos' criminal history did not warrant application of the offense level and criminal history category dictated by the career offender guideline.  **As a part of its Chapter Four analysis, the Court arrived at an adjusted offense level of 27, and a criminal history category of III.**  Following the mandate of § 1B1.1 to apply the nine steps in order, only <u>after</u> arriving at these levels did the Court consult the Sentencing Table in order to determine the applicable guideline range.  Upon consultation of the Sentencing Table, the Court determined that the applicable guideline range was 87 to 108 months.  That range has now been lowered by a retroactive amendment to the Guidelines, to a new range of 70 to 87 months.

### III.    The Relevance of § 1B1.10(b)(2)

In the Menafee ruling, the Court stated that § 1B1.10(b)(2) of the Guidelines supported its conclusion that Mr. Menafee was ineligible for relief.  As a preliminary matter, the provisions of § 1B1.10(b)(2) relied upon by the Court were not in effect at the time Mr. Carlos was sentenced.

In the November 1, 2001, Guidelines Manual, § 1B1.10(b) read, in its entirety, as follows:

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced, except that in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

U.S.S.G. § 1B1.10(b) (Nov. 1, 2001). There is no mention in this provision of terms of imprisonment that are less than the term provided by the applicable guideline range, and there is of course no mention of United States v. Booker, 543 U.S. 220 (2005), which had not yet been decided.

"Ordinarily a sentencing court must apply the version of the Guidelines in effect on the date of the defendant's sentencing." United States v. Kilkenny, 493 F.3d 122, 126 (2d Cir. 2007). Until and unless the Court concludes that Mr. Carlos is, in fact, eligible for resentencing, the Guidelines to be applied must be those that were in effect at the time of his sentencing in 2002. Furthermore, even if the date of resentencing is considered the relevant date for these purposes, the commentary to § 1B1.10 – both in 2002 and today – dictates that in such a resentencing a court shall substitute only the amended guideline provision, and "[a]ll other guideline application decisions remain unaffected." U.S.S.G. § 1B1.10 cmt. 2 (Nov. 1, 2001; Nov. 1, 2007). Thus, the version of § 1B1.10(b)(2) cited by the Court in the Menafee ruling cannot be substituted for the version that was in effect in 2002, and it has no effect on Mr. Carlos' case.

The same analysis applies to application note 3 to § 1B1.10, also relied upon by the Court in the Menafee ruling. The portion of the application note cited by the Court was not included in

the version of the Guidelines applicable to Mr. Carlos in 2002, and thus, cannot be employed to disadvantage him now. See U.S.S.G. § 1B1.10 cmt. 3 (Nov. 1, 2001).

The Court's reliance on this provision is also flawed when viewed through the prism of the § 1B1.1 analysis set forth above. As explained previously, if a sentencing court complies with the dictates of § 1B1.1 – as it was required to do in 2002 – then the guideline range is not determined until **all** Chapter Four considerations have been completed and **all** Chapter Four adjustments have been made. In other words, "the guideline range applicable to the defendant at the time of sentencing" in this case, and other similar cases, is the range arrived at when the Court reaches step (g) of § 1B1.1 and determines the applicable guideline range. When § 1B1.10(b)(2)(A) speaks of a term of imprisonment that is less than the term "provided by the guideline range applicable to the defendant at the time of sentencing," it is referring to true departures under Chapter 5 of the Guidelines, which are applied in step (i) of § 1B1.1.

**IV.    The 2003 Amendments to the Commentary to § 1B1.1 Addressing § 4A1.3**

In the Menafee ruling, the Court concluded that even if the applicable guideline range was reduced, it would decline to resentence Mr. Menafee because Mr. Menafee's original sentence did not comply with the Guidelines as they were in effect at that time. Specifically, the Court noted that an amendment to § 1B1.1 took effect on November 1, 2003, that limited the extent of a § 4A1.3 adjustment to a reduction of a single criminal history category, with no change in offense level. See Menafee ruling at 3, n.2.

The impact of this amendment is extremely limited in time. Only those defendants, like Mr. Menafee, who were sentenced and whose offense conduct occurred after November 1, 2003, are affected by the amendment at all. Any defendant whose offense conduct occurred after

November 1, 2003, is technically subject to the amendment but there is little practical impact, because on January 12, 2005, the United States Supreme Court decided Booker, rendering the Guidelines merely advisory. Thus, the Court is restricted by the amendment only in regards to those defendants whose offense conduct and sentencing both occurred between November 1, 2003, and January 12, 2005.[3]

Mr. Carlos was sentenced in 2002, before the amendment was enacted, and thus it has no application to his case. Accordingly, to the extent the Court relied on the amendment in reaching its decision in the Menafee case, that case is distinguishable from this one.

## V.    Conclusion

The Guidelines are a complex and sometimes confusing system. Over time, through the process of amendment and interpretation, their meaning shifts and their impact changes. When the Guidelines were binding on sentencing courts, and when no retroactive amendments were involved, the precise classification of § 4A1.3 adjustments as "departures," and the distinction between a § 4A1.3 "departure" and a Chapter Five departure, was meaningless. The order of application of the guideline chapters was rarely a focus of discussion. Now, however, the impact of these provisions is of the utmost importance.

Mr. Carlos was sentenced at a time when this Court was obligated to follow the dictates of the Guidelines Manual. This Court was required to comply with the mandate of § 1B1.1 that

---

[3] It is arguable that in every case in which the Court found that it was inappropriate under a binding guidelines system to sentence a defendant within the career offender range, it would also be inappropriate post-Booker under 18 U.S.C. § 3553 to sentence the defendant within that range. If the Court found that a given defendant's criminal history did not justify a sentence of 188 to 235 months pre-Booker, it seems hard to conceive of how such a sentence could be justified post-Booker. That question, however, is not presented here.

it apply the provisions of the Manual in a given order. Under that mandate, this Court was not permitted to consult the Sentencing Table and arrive at a guideline range until <u>after</u> it had fully accounted for all Chapter Four factors and adjustments, including the adjustment applied to Mr. Carlos under § 4A1.3. The guideline range determined by this Court in the first instance, as required by § 1B1.1(g) of the Guidelines Manual, was 87 to 108 months, and that was the range that was applied to Mr. Carlos, and within which he was sentenced. That range was determined by calculating the quantity of crack cocaine attributable to Mr. Carlos, and selecting an offense level set forth in § 2D1.1 for that quantity. The offense level in § 2D1.1 has now been reduced, and thus so has Mr. Carlos' guideline range. He therefore is eligible for resentencing under 18 U.S.C. § 3582.

> Respectfully submitted,
>
> The Defendant,
> Leslie Wayne Carlos
>
> Thomas G. Dennis
> Federal Defender

Dated: August 28, 2008
_____/s/_____
Sarah A. L. Merriam
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Bar No. ct25379
Phone: 203-498-4200
Fax: 203-498-4207
Email: sarah_merriam@fd.org

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on August 28, 2008, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                  /s/
              Sarah A. L. Merriam