UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:00CR263(JCH) |
| | : | |
| v. | : | |
| | : | |
| LESLIE WAYNE CARLOS | : | SEPTEMBER 10, 2008 |

**GOVERNMENT'S RESPONSE TO AUGUST 29, 2008 ORDER TO SHOW CAUSE
AND SUPPLEMENTAL RESPONSE TO DEFENDANT'S REQUEST FOR A
SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)**

On August 28, 2008, the defendant Leslie Wayne Carlos ("Carlos") submitted a supplemental memorandum attempting to distinguish the Court's recent ruling in *United States v. Menafee*, 3:04CR138(JCH), Doc. # 2158 (D. Conn., Aug. 5, 2008). In *Menafee*, the Court properly concluded that a career offender was not eligible for a reduction under U.S.S.G. § 1B1.10 for the new crack amendment because, among other things, the retroactive amendment "does not have the effect of lowering the defendant's applicable guideline range," a prerequisite to applying the amendment. *Id.* at 4. The Court noted that the key issue in the § 1B1.10 analysis is to determine whether the "applicable guidelines range" is calculated before or after the Court considers departures, correctly concluding that the phrase applied to the determination of the applicable offense level calculation *prior* to any departure. *Id.* at 6. The defendant now attempts to distinguish *Menafee* by arguing that a departure under § 4A1.3 for overstated criminal history is not a "true" departure and thus the phrase "applicable guidelines range" could include a § 4A1.3 "adjustment" without doing violence to the construction of the guidelines.

On or about August 29, 2008, the court issued an order directing the government to show cause why a reduction should not be granted for the reasons set forth in the defendant's supplemental memorandum discussing these alleged differences between departures under

U.S.S.G. § 4A1.3 and other departures. The government respectfully submits this response.

The government respectfully submits that there is no need to create novel and unprecedented categories of "true departures" and second-class departures to circumvent the Sentencing Commission's plain intent. The defendant strains to make complex and confusing that which, for the guidelines, is remarkably straightforward on its face. The Sentencing Commission has already and repeatedly made clear that § 4A1.3 reflects a bonafide ground for "departure," not an "adjustment" or any other term of art, and the Second Circuit has long considered and expressly referred to departures under § 4A1.3 and/or *United States v. Mishoe*, 241 F.3d 214 (2d Cir. 2001) as just that – "departures." Indeed, in a recent case Judge Cabranes expressly cited § 4A1.3 as an example of something that qualifies as a "departure" under the Guidelines. *See United States v. Killer*, – F.3d – , 2008 WL 3542307 at *2, n.2 (2d Cir. 2008) (Cabranes, C.J.) ("While the terms 'departure' and 'variance' are often used interchangeably to describe deviations from the recommended Guideline range . . . a 'departure' refers to a decision by the District Court to impose a sentence outside the otherwise applicable Sentencing Guidelines range pursuant to a provision of the Guidelines. *See, e.g., U.S.S.G. § 4A1.3 (departure based on inadequacy of criminal history category)* . . . .") (emphasis added). Indeed, even a cursory search of case law under U.S.S.G. § 4A1.3 reveals that the Second Circuit considers and has repeatedly referred to upward or downward adjustments under § 4A1.3 as "departures." As a consequence, and as explained in prior submissions, the crack amendment simply does not apply to career offender cases because the amendment does not change the "applicable guidelines range" prior to any departure.

Far from ambiguous, the November 1, 2001 Guidelines Manual applicable to the defendant's sentencing states under § 4A1.3 that if the criminal history category over-represents the seriousness of the defendant's criminal history, the court may "consider a *downward departure* from the guidelines." *Id.* (emphasis added). The Section goes on to explain how the court is to undertake the guided departure, repeatedly and expressly referencing the term "departure." Not once does the guideline use the term "adjustment." The 2007 Guidelines Manual is even more explicit.[1] The Section is appropriately titled "4A1.3 *Departures* Based on Inadequacy of Criminal History Category." *Id.* (emphasis added). The Section discusses grounds for "upward departures," "downward departures" and limitations on "departures" based on certain defendant characteristics. *Id.* Again, the Commission is careful to use the term-of-art "departure," rather than other terms such as "reductions" or "adjustments," and, if there were any lingering doubt, the application note to Section 4A1.3 clarifies the terminology even further:

> for purposes of this policy statement [§ 4A1.3], the terms "depart", "departure", "downward departure", and "upward departure" have the meaning given those terms in Application Note 1 of the Commentary to § 1B1.1 (Application Instructions).

*See* § 4A1.3 App. Note 1. The referenced application note in § 1B1.1 actually defines the term "Departure" for purposes of the guidelines. It, in fact, expressly mentions § 4A1.3 and explains that a *departure* under § 4A1.3 means the "assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guidelines range." *Id.* The definition further explains that "downward departure" is a

---

[1] The government references the November 1, 2007 Guidelines Manual in this submission for several reasons. It provides clarifying amendments as to the interpretation and application of prior guidelines. *See*, *e.g.*, § 1B1.11(b)(2). It also is the most recent guidance from the Sentencing Commission and gives context to the new § 1B1.10, which was included in the supplement to that 2007 Guidelines.

departure "that effects a sentence less than a sentence that could be imposed under the applicable guideline range . . . ." *Id.* The Sentencing Commission could not have been more explicit. A departure under Section 4A1.3 is as genuine a departure as any other departure in the guidelines.

Rather than focus on the Commission's carefully defined terms in § 4A1.3 and § 1B1.1, the defendant instead refers to the 1987 introductory chapter to the Guidelines Manual, asserting that the Commission intended *three* types of departures; that § 4A1.3 is not an enumerated type; and thus it is not a "true" departure. The original three-types-of-departure wording, however, was removed by the Sentencing Commission in 1989 and later modified further. *See*, *e.g.*, Appendix C, amendment 68 (1989) and amendment 307 (1990). By the 2001 Manual, the Sentencing Commission in its general introduction described two generic kinds of departures: the first involving instances where the guidelines provided specific guidance for departure by analogy or other numerical or non-numerical suggestions, and the second involving unguided departures. *See* U.S.S.G. § 1A(4)(b). The departure contemplated by § 4A1.3 under the 2001 Manual plainly involved the first type of departure as the Section at length provided detailed suggestions how the court has to fashion a departure.

By 2007, the introductory section on which the defense relies had been shortened by the Commission to one paragraph, describing the general authority for the Guidelines. *See* 2007 U.S.S.G. Manual § 1A1.1. Indeed, by that time, the original language on which the defendant relies was relegated to appended materials simply to provide context and historical information. *See* U.S.S.G. § 1A1.1 (commentary). In short, the defendant's reliance on the early days of the guidelines is misplaced and does not provide support for the argument that the 2008 Sentencing Commission, in adopting the new § 1B1.10, intended § 4A1.3 to be anything other than a

standard ground for departure – just as the Commission had expressly defined it to be.

In his effort to recast § 4A1.3 as something other than a ground for departure, the defendant also misreads the step-by-step process for applying the guidelines as set forth in steps (a) through (i) of Section 1B1.1. The defendant contends that Chapter Four calculations are generally mentioned in the application instructions in step (f) of § 1B1.1, a step before the court is to determine the guidelines range in the sentencing table under step (g). Because there is no express mention of Chapter Four after step (f), the defendant claims that the Sentencing Commission must have intended that the court apply § 4A1.3 before determining the relevant sentencing range. It cannot be a "true" departure, the defendant claims, because true departures are to be applied in the subsequent step (i), after the court determines a sentencing range.

This interpretation, however, ignores the language of step (i). Under step (i), the sentencing court is instructed to refer to "Parts H and K of Chapter 5, Specific Offender Characteristics and Departures, and to *any other policy statements* or commentary in the guidelines that might warrant consideration in imposing sentence." U.S.S.G. § 1B1.1(i) (emphasis added). Because § 4A1.3 is expressly labeled by the Sentencing Commission in the 2001 Manual to be a "policy statement," *see* U.S.S.G. § 4A1.3 (descriptive heading), it is appropriately and reasonably considered by the Court under step (i) as a ground for departure *after* the determination of the initial guidelines sentencing range, just like the Court considers departures under Part K of chapter 5, such as substantial assistance (§ 5K1.1) or early disposition programs (§ 5K3.1). Again, by expressly labeling Section 4A1.3 as both a policy statement and ground for departure, the 2007 Manual gives even stronger indication that an overstated-criminal-history departure is properly calculated in step (i), after determining the initial

applicable criminal history and sentencing range. *See also* § 1B1.1 application note 1(E) (defining § 4A1.3 as a departure). That the Commission sought to treat § 4A1.3 similar to Chapter 5 departures under step (i) is plainly supported by the application note in § 5K2.0, which lumps § 4A1.3, along with § 5K1.1 (substantial assistance), and § 5K3.1 (early disposition programs), as *other types of departures* covered by more specific departure guidelines.

In fact, as a matter of common sense, Section 4A1.3 by its own terms presupposes that the court has already undertaken the Chapter 4 criminal history calculation contemplated by step (f) before entertaining a "departure" later in step (i). Absent the existence of an original criminal history calculation or sentencing range, there is plainly no calculation from which to "depart." At the time of sentencing, the defendant apparently believed that this was the appropriate order in which the § 1B1.1 steps were applied as well. The parties *agreed* in the plea agreement to the guidelines sentencing range as driven by the career offender guidelines (steps (f) and (g)), and then agreed that no subsequent *departures* would be sought from that sentencing range (step (i)):

> The defendant and the Government agree that the defendant is responsible for more than 5 grams of cocaine base as a result of his direct participation in this offense. Further, the government and the defendant agree that the defendant is a "career offender" pursuant to United States Sentencing Guidelines Section 4B1.1 as the defendant has two prior felony narcotics convictions that meet the requirements of section 4B1.1. As a result, the defendant's base offense level is 31, and Criminal History Category VI, resulting in a sentencing guideline range of 188-235 months. Both parties agree that they will not seek a departure from this range. The defendant understands that he is waiving his right to seek a departure knowingly and voluntarily.

*See* Plea Agreement dated February 22, 2002 at 4. The bottom line is that nothing in the sentencing steps outlined in § 1B1.1 undercuts the Sentencing Commission's treatment of overstated criminal history as a true departure.

Finally, the defendant argues that the amended § 1B1.10(b)(2) should not apply in this case because it was not in existence at the time of the defendant's sentencing. Section 1B1.10, however, does not apply to *sentencings*, but is intended to provide guidance on how to retroactively apply amendments to the guidelines adopted during the defendant's subsequent period of incarceration. The defendant's emphasis on what was before the sentencing court at the defendant's sentencing is irrelevant. By the defendant's logic, because the crack amendment did not exist at the time of his sentencing, the Court could not consider it. The crack amendment was given retroactive status as part of the amended § 1B1.10 that went into effect in March 2008. There is nothing improper for the Court to consider the new § 1B1.10 – the enabling guideline – in its entirety when determining whether to apply the crack amendments to this case.[2]

## CONCLUSION

For the reasons stated above, because the defendant's guideline range was determined by his status as a career offender, the November 1, 2007 amendments to the crack cocaine guidelines simply do not have the effect of lowering the defendant's applicable guideline range, even though the Court subsequently *departed* from that range. As this Court has previously held, because the crack amendments do not alter the defendant's guideline range, he is not eligible for a reduction in his sentence. *See United States v. Darius McGee*, 3:01CR219(JCH), Doc. #61, (D.

---

[2] The defendant in passing argues that the 2003 amendment to § 4A1.3, limiting the departure for § 4A1.3 to one level, has no applicability here. As discussed in the government's prior memorandum, the relevance of the amendment to this case is that it makes clear that the Sentencing Commission was hardly predisposed to give career offenders the benefit of retroactive amendments. A fair interpretation of the new § 1B1.10 is that the retroactive crack amendments simply do not apply to those who were career offenders at the date of their original sentencing.

Conn. Mar. 27, 2008) and *United States v. Menafee*, 3:04CR138(JCH), Doc. # 2158 (D. Conn., Aug. 5, 2008).

          Respectfully submitted,

          NORA R. DANNEHY
          ACTING UNITED STATES ATTORNEY


          /s/
          STEPHEN B. REYNOLDS
          ASSISTANT UNITED STATES ATTORNEY
          Federal Bar No. ct19105
          United States Attorney's Office
          157 Church Street, 23d Floor
          New Haven, CT 06510
          (203) 821-3700
          (203) 821-3829 (fax)
          Stephen.Reynolds@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Sarah A. L. Merriam  
Assistant Federal Public Defender  
265 Church Street, Suite 702  
New Haven, Connecticut 06510  
(203) 498-4200  
(203) 498-4207 (fax)  
sarah_merriam@fd.org  

Michael E. Sheehan  
Supervising U.S. Probation Officer  
United States Probation Officer  
157 Church Street, 22nd Floor  
New Haven, Connecticut 06510  
(203) 773-2100  
(203) 773-2200 (fax)  

 /s/
STEPHEN B. REYNOLDS  
ASSISTANT UNITED STATES ATTORNEY